UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
AARON PARKER,                                          :
               Plaintiff,                :
                                         :
v.                                                     :
                                         :
CHAPLAIN TERESA DARDEN; SHERIFF                        :
LOUIS FALCO III; SGT. LOUIS FALCO IV;                  :
and CHIEF OF CORRECTIONS ANTHONY J.                    :
VOLPE,                                                 :
               Defendants.               :
------------------------------------------------------------x

**OPINION AND ORDER**

16 CV 6532 (VB)

Briccetti, J.:

      Plaintiff Aaron Parker, proceeding pro se and in forma pauperis, brings this action under

42 U.S.C. § 1983, alleging defendants Chaplain Teresa Darden, Sheriff Louis Falco III, Sergeant

("Sgt.") Louis Falco IV, and Chief of Corrections Anthony J. Volpe violated his First

Amendment right to freedom of religion while he was incarcerated at Rockland County Jail

("RCJ").[1]

      Now pending is defendants' unopposed motion for summary judgment.  (Doc. #67).[2]

      For the reasons set forth below, the motion is GRANTED.

      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]     Four plaintiffs originally filed the complaint—Aaron Parker, Patricia Mortel, Sheikh Afzal, and James C. King.  By Orders dated October 21, 2016, and November 6, 2017, the Court dismissed plaintiffs Afzal, King, and Mortel pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute or comply with a Court order.  (Docs. ##8, 30).  As a result, Parker is the only plaintiff remaining in the case.

[2]     Plaintiff's opposition was originally due February 5, 2019.  Plaintiff failed to file an opposition or seek an extension of time to do so by that date.  On February 25, 2019, the Court sua sponte extended plaintiff's time to oppose to March 27, 2019.  Plaintiff again failed to file an opposition or seek an extension of time to do so.  Accordingly, on April 8, 2019, the Court deemed the motion fully submitted and unopposed.

# BACKGROUND

Defendants have submitted a brief, a statement of material facts, supporting affidavits and declarations, and exhibits, which, along with plaintiff's complaint, reflect the following factual background.

A.   Allegations

At all relevant times, plaintiff was incarcerated at RCJ.  Plaintiff, who identifies as Muslim, alleges defendants interfered with the practice of his religion in several ways.  Plaintiff alleges:

  i.  Chaplain Darden did not provide religious materials, including the Quran, to Muslim inmates when requested, whereas she provided bibles to members of other religions upon request;

  ii.  Chaplain Darden did not allow female inmates to attend Muslim services;

  iii.  Chaplain Darden and a nonparty captain did not let non-Muslims attend Islamic services, whereas other religions had an "open door policy" (Doc. #3 ("Compl.") at 3);

  iv.  The only way RCJ inmates could obtain Halal meals was through the grievance process;

  v.  Plaintiff did not know what "the funds were being used for concerning our Islamic religion" (id.); and

  vi.  RCJ officials prevented inmates from taking the Shahada oath, which plaintiff states is required for conversion to Islam.

In addition, plaintiff alleges on July 18 and 19, 2016, at 3:00 and 11:00 p.m., plaintiff and other inmates were praying in the day room area.  According to plaintiff, Sgt. Falco, in a "threatening tone," told the housing officer to stop the inmates from praying and verbally abused the inmates.  (Compl. at 4).  Plaintiff alleges the inmates had been praying in the day room for months without any issues.

Sgt. Falco states he "directed the officers supervising plaintiff's housing unit to stop the inmates from congregating with facility issued blankets and their personal prayer rugs on the floor of the day space area." (Doc. #66-21 ("Falco Decl.") ¶ 2). According to Sgt. Falco, he told the inmates they could pray any time they wanted in their respective cells, at the day room tables, or during their allotted times in the programs area.

Finally, plaintiff claims defendants Sgt. Falco and Chaplain Darden defamed his character. Plaintiff testified at his deposition that Sgt. Falco and Chaplain Darden each said plaintiff was not a Muslim, but conceded neither defendant did so in the presence of a third party.

B.    Grievances

According to the chief of corrections for the Rockland County Sherriff's office, plaintiff filed five grievances while at RCJ. Only two of those grievances are relevant here.[3]

The first grievance, dated July 20, 2016 (#2016–89), concerns Sgt. Falco's alleged use of racist remarks and disruption of the inmate's prayer in the day room. The grievance coordinator found the grievance was unsubstantiated and denied action on the grievance. Plaintiff's subsequent appeals were likewise denied.

In the other relevant grievance (#2016–87), dated July 22, 2016, plaintiff asserted that Chaplain Darden had inappropriately shared "family business" with his "girlfriend in the County Jail" and that Chaplain Darden was wrong to discriminate against Muslims "because a person

---

[3]    The other three grievances involve plaintiff's claims that (i) he did not receive return receipts for three letters, (ii) a nonparty amended plaintiff's legal documents, and (iii) officers failed to comply with New York State health rules regarding cleaning hazardous waste.

want to change their faith." (Doc. #66-16 at ECF 2).[4]  The grievance and plaintiff's appeals were ultimately denied.

In addition, another inmate—James King, a former plaintiff in this action—filed a grievance relating to the facility providing Halal meals to Muslims who requested them. Plaintiff testified at his deposition that he signed King's grievance, but did not file his own grievance related to Halal meals.

## DISCUSSION

I.     Standard of Review

A.     Summary Judgment

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine

---

[4]     "Doc. #__ at ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system.

issue of material fact.  <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249–50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." <u>Brown v. Eli Lilly & Co.</u>, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation omitted).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.  <u>Dawson v. County of Westchester</u>, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper.  <u>See</u> <u>Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.</u>, 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial.  <u>Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.</u>, 164 F.3d 736, 746 (2d Cir. 1998).

II.    Standing

Defendants argue plaintiff lacks standing to bring claims for women and non-Muslims who were not permitted to attend Muslim services, and for inmates who were not permitted to take the Shahada oath.

The Court agrees.

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance.  This inquiry involves 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'"  Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n, 747 F.3d 44, 48 (2d Cir. 2014) (quoting Kowalski v. Tesmer, 543 U.S. 125, 128–29 (2004)).  "The 'prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'"  Rajamin v. Deutsche Bank Nat'l Trust Co., 757 F.3d 79, 84 (2d Cir. 2014) (quoting Warth v. Seldin, 422 U.S. 490, 509 (1975)).  Thus, a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  Id. (quoting Warth v. Seldin, 422 U.S. at 499). However, a court may permit third-party standing when a plaintiff can demonstrate "(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests."  W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 109 (2d Cir. 2008).

Plaintiff does not assert that defendants' alleged refusal to allow women and non-Muslims to attend Muslim services, or to allow inmates to take the Shahada oath, violated his rights—rather, plaintiff asserts these practices violated the rights of other inmates.  Indeed, plaintiff fits into none of the categories of people he claims were injured by these alleged practices:  plaintiff is male, a Muslim, and was not prevented from taking the Shahada oath.

Moreover, plaintiff has not asserted, let alone submitted any evidence, that he has a sufficiently close relationship to the third parties for whom he brings claims, or that those third parties are unable to assert their own interests.

Accordingly, plaintiff's claims based on defendants' alleged refusal to allow women and non-Muslims to attend Muslim services, or to allow inmates to take the Shahada oath, are dismissed.

III.    Exhaustion of Administrative Remedies

Defendants argue plaintiffs' remaining claims, except for plaintiff's claim based on Sgt. Falco's preventing plaintiff from praying in the day room, should be dismissed with prejudice for failure to exhaust administrative remedies. Those claims are based on: (i) Chaplain Darden's alleged failure to provide the Quran or other religious materials to Muslims, (ii) defendants' alleged failure to provide Halal meals to inmates, (iii) defendants' allegedly improper use of funds for Islamic programming or services, and (iv) Chaplain Darden and Sgt. Falco's allegedly defamatory remarks.

The Court agrees, except as to plaintiff's defamation claims. Such state law claims are not subject to the Prison Litigation Reform Act's ("PLRA") exhaustion requirement. See Nunez v. Goord, 172 F. Supp. 2d 417, 430 (S.D.N.Y. 2001) (holding PLRA's exhaustion requirement does not apply to state-law claims), reconsideration granted on other grounds, 2002 WL 1162905 (S.D.N.Y. June 3, 2002).

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under . . . Federal law[] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve

general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Failure to exhaust is an affirmative defense, Williams v. Correction Officer Priatno, 829 F.3d 118, 122 (2d Cir. 2016), and therefore defendants bear the burden of proving it, Key v. Toussaint, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009). An inmate's claim is properly dismissed with prejudice when "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2004).

Like with notice pleading, a grievance must "allege facts sufficient to alert corrections officials 'to the nature of the claim,' and 'provide enough information about the conduct' at issue 'to allow prison officials to take appropriate responsive measures.'" Singh v. Lynch, 460 F. App'x 45, 47 (2d Cir. 2012) (summary order) (quoting Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004)).[5] "[T]he grievance may not be so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006).

Here, plaintiff filed a grievance (#2016–89) regarding only one of the federal claims for which he has standing—his claim that Sgt. Falco told plaintiff and other inmates that they could not pray in the day room. But neither that grievance, nor any of the other four that the Rockland County Sheriff's office provided from plaintiff's time at RCJ, notified prison officials that plaintiff sought to bring any of the other claims for which he has standing.

Moreover, plaintiff's alleged signing of King's grievance does not show plaintiff exhausted his administrative remedies regarding plaintiff's claim that inmates could only obtain

---

[5]     Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this ruling. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Halal meals by filing grievances. Under state regulations governing grievance procedures in local jails, "complaints pertaining to an inmate other than the inmate actually filing the grievance are not grievable and may be returned to the inmate by the grievance coordinator." N.Y. Comp. Codes R. & Regs. tit. 9, § 7032.4(h). Further, the PLRA does not permit vicarious exhaustion absent class certification. Pagan v. Westchester County, 2014 WL 982876, at *12 (S.D.N.Y. Mar. 12, 2014), on reconsideration, 2015 WL 337403 (S.D.N.Y. Jan. 26, 2015).

Further, plaintiff does not assert that the grievance procedure was unavailable to him. See Ross v. Blake, 136 S. Ct. 1850, 1859 (2016) (a prisoner's duty to exhaust can be excused only when the administrative remedy is unavailable, or put differently, "officially on the books [but] . . . not capable of use to obtain relief").

Finally, plaintiff's time to file a grievance has expired—under RCJ regulations, an inmate must file a formal grievance within five days of the act or occurrence giving rise to the grievance.

Accordingly, plaintiff's claims based on (i) Chaplain Darden's alleged failure to provide the Quran or other religious materials to Muslims, (ii) defendants' alleged failure to provide Halal meals to inmates, and (iii) defendants' allegedly improper use of funds for Islamic programming or services, are dismissed with prejudice.

IV.     Defamation Claims

Defendants argue plaintiff's defamation claims against Sgt. Falco and Chaplain Darden fail as a matter of law because plaintiff admitted at his deposition that neither Sgt. Falco nor Chaplain Darden publicized their comments to a third party that plaintiff was not a Muslim. The Court agrees. See Friedman v. Self Help Cmty. Servs., Inc., 647 F. App'x 44, 47 (2d Cir. 2016)

(summary order) (defamation claim in New York requires publication to a third party of a defamatory statement of fact that was false).

Accordingly, summary judgment is granted in defendants' favor on plaintiff's defamation claims.

V.      Free Exercise Claim[6]

The only remaining claim is plaintiff's First Amendment claim against Sgt. Falco for refusing to let plaintiff pray in the day room. That claim fails because Sgt. Falco had a legitimate penological interest in prohibiting plaintiff from praying in the day room, and plaintiff has not submitted any evidence suggesting Sgt. Falco's concerns were irrational.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal citations omitted). To prove a violation of his First Amendment right to free exercise of religion, an inmate must show "at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin v. Goord, 467 F.3d 263, 274–75 (2d Cir. 2006) (internal citation omitted). "The defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." Id. at 275. Finally, the inmate must show the articulated concerns were irrational. Id.

---

[6]      To the extent plaintiff asserts claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, they must be dismissed. Only injunctive relief is available under RLUIPA, Holland v. Goord, 758 F.3d 215, 224 (2d Cir. 2014), and plaintiff's claims for injunctive relief are moot because plaintiff is no longer housed at RCJ and does not allege he will be subject to the same action again, Pugh v. Goord, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008).

A regulation that burdens a protected right must be reasonably related to a legitimate penological interest to pass constitutional muster. Salahuddin v. Goord, 467 F.3d at 274. Courts evaluate four factors in determining reasonableness:

> [(i)] whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; [(ii)] whether prisoners have alternative means of exercising the burdened right; [(iii)] the impact on guards, inmates, and prison resources of accommodating the right; [(iv)] and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

Id. (citing Turner v. Safley, 482 U.S. 78, 90–91 (1987) (footnote omitted)).

Here, even assuming plaintiff's sincerely held religious beliefs were substantially burdened, defendants have proffered legitimate penological interests in prohibiting plaintiff from praying in the day room: to prevent (i) tripping; (ii) creating fire hazards; (iii) inmates from interfering with the movement of other inmates and staff; and (iv) inmates from surprise-attacking other inmates or staff members attempting to pass. Moreover, although plaintiff's testimony on this point vacillated, plaintiff admitted at his deposition that the housing officer told him he was permitted to pray in his cell—an alternative means of exercising his right. According to Sgt. Falco, plaintiff also had the option of praying at the tables in the day room or during the allotted time in the program area, although plaintiff testified this option was never communicated to him.

Plaintiff, who did not oppose the motion for summary judgment, has not shown Sgt. Falco's concerns were irrational. Cf. Miller v. Bouchard, 2013 WL 1294417, at *9 (N.D.N.Y. Mar. 4, 2013) ("Even when construed liberally, and granting Plaintiff every reasonable inference, Plaintiff's Complaint standing alone is simply insufficient to warrant a finding that Defendant's policies were irrational or that the accommodation offered to Plaintiff was unreasonable."), report and recommendation adopted, 2013 WL 1289526 (N.D.N.Y. Mar. 26, 2013).

As for plaintiff's assertion that Sgt. Falco used racist or derogatory language in telling plaintiff he could not pray in the day room, plaintiff admitted at his deposition that he did not speak to Sgt. Falco on the day the housing officer told him he could not pray in the day room. Moreover, even if Sgt. Falco had used racist or derogatory language, it is unclear how, if at all, that would support plaintiff's free exercise claim.

Accordingly, defendants are entitled to summary judgment on plaintiff's free exercise claim based on Sgt. Falco's alleged refusal to let plaintiff pray in the day room.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #67) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: August 28, 2019
       White Plains, NY                           SO ORDERED:


                                                  Vincent L. Briccetti
                                                  United States District Judge